Carolyn **HUCKEBY**

v.

**FROZEN FOOD EXPRESS.**

No. CA 3–74–622–C.

United States District Court,
N. D. Texas,
Dallas Division.

March 4, 1977.

Judson Francis, Jr., Bean, Francis, Ford, Francis & Wills, Jerry Clements, Dallas, Tex., for plaintiff.

Allen P. Schoolfield, Jr., Schoolfield, Smith & Weissert, Dallas, Tex., for defendant.

## MEMORANDUM OPINION

WILLIAM M. TAYLOR, Chief Judge.

Plaintiff Carolyn Huckeby brought suit against defendant Frozen Foods Express corporation, for alleged violations of Title VII of the Civil Rights Act of 1964, and the Fair Labor Standards Act of 1938, as amended. Having heard the evidence and oral arguments, and reviewed the briefs and proposed findings and conclusions filed on behalf of both parties, the Court is of the opinion that judgment must be entered for defendant.

In May, 1971, plaintiff was hired by defendant as secretary to Lester Crews, the director of defendant's department of insurance, safety and driver personnel. Plaintiff's duties included, in addition to general stenographic and typing work, the handling of some clerical tasks relating to the defendant's insurance program.

The department was set up so that Crews directed the entire office, with three assistants directly under him, each in charge of a separate section within the department. Gene Koshinski served as one of the assistants, and as such, supervised the insurance section.

Crews retired in March, 1973, and was succeeded as director by Dick Bennett. Plaintiff remained in her position as secretary to the director, and continued to handle insurance clerical work.

In June, 1973, Gene Koshinski was fired. His termination created a void in the insurance section, which plaintiff and Bennett jointly filled. Plaintiff took over many of Koshinski's clerical chores, often working from the desk where insurance records were kept, while director Bennett assumed all discretionary duties involving the insurance program. The assumption of additional work by plaintiff sometimes necessitated her working extra hours, for which, when reported, she was compensated.

During the summer of 1973, plaintiff was able to leave her duties long enough to take two weeks vacation. From September 10, 1973, through October 29, 1973, plaintiff was absent from work due to illness. During that time her work was performed by other secretaries in the department.

On November 29, 1973, plaintiff filed a complaint against defendant with the Equal Employment Opportunity Commission. In early 1974, defendant filled the position left vacant by Koshinski. Rather than hire a new supervisor, defendant upgraded the position to assistant director of the department, and hired Al Ryer to fill the post. Plaintiff was never interviewed for the job.

On July 2, 1974, plaintiff initiated this lawsuit, alleging 1) that defendant violated the equal pay provisions of the Fair Labor

Standards Act by failing to pay plaintiff the same wages paid to Gene Koshinski and Al Ryer, and 2) that defendant violated Title VII of the Civil Rights Act of 1964 by failing to promote plaintiff to the position of assistant director and by retaliating against plaintiff because she filed a charge of discrimination against defendant with the EEOC.

### Equal Pay

The equal pay provision of the Fair Labor Standards Act prohibits employers from discriminating, on the basis of sex, between employees performing equal work on jobs which require "equal skill, effort, and responsibility, and which are performed under similar working conditions . . . ." 29 U.S.C. § 206(d)(1) (1963). Plaintiff contends that she performed work that was "equal," within the meaning of the Act, to that performed by Gene Koshinski and Al Ryer. The Court disagrees.

■ In enacting the equal pay provision, Congress, in prescribing "equal" work, did not intend that jobs be identical; only that they be substantially equal, *Hodgson v. Behrens Drug Co.*, 475 F.2d 1041 (5th Cir. 1973), in light of a careful weighing of the factors involved in performance of a given job. *Brennan v. City Stores, Inc.*, 479 F.2d 235 (5th Cir. 1973). In reviewing equal pay claims, the Fifth Circuit has held that jobs are *not* "equal,"

> even though they entail most of the same routine duties, if the more highly paid job involves additional tasks which 1) require extra effort, 2) consume a significant amount of time of all those whose pay differentials are to be justified in terms of them, and 3) are of an economic value commensurate with the pay differential.

*Hodgson v. Brookhaven Gen. Hosp.*, 436 F.2d 719, 725 (5th Cir. 1970).

■ With respect to plaintiff's claim that she performed work equal to that performed by Koshinski, the evidence supports that claim only to the extent that both performed similar routine clerical duties regarding defendant's insurance program. However, Koshinski's responsibilities went beyond those discharged by plaintiff. Most significantly, Koshinski had discretionary authority to settle insurance claims up to $500. After Crews retired as director, the limit was removed, and Koshinski was empowered with complete discretion over insurance claims and the issuance of checks relating thereto. When Koshinski left, all responsibility relating to settlement of insurance claims and disbursement of funds was shifted to director Bennett, and later, to assistant director Ryer.

The court concurs with defendant's assertion that the settlement of insurance claims constituted a significant and substantial portion of Koshinski's job responsibilities during his tenure with defendant. The Court makes no finding with regard to plaintiff's ability to perform the above work; only that she did not perform it.

In addition to the above duties, Koshinski also taught classes at the defendant's driver training school, attended prehearing conferences and trials as a representative of defendant, and investigated accidents on an average of at least one per month. Plaintiff assumed none of the above duties, except that she investigated one minor accident that occurred at the Lancaster terminal, where she worked.

■ Plaintiff's claim that she and Al Ryer performed equal work is also without sufficient support in the evidence. Ryer shares responsibility with Bennett for the handling and settlement of insurance claims, directly oversees defendant's driver training school, and conducts the investigation of accidents. Plaintiff never performed any of these duties.

In short, the Court is convinced that Koshinski and Ryer exercised responsibility not exercised by plaintiff, that they performed tasks not performed by plaintiff, that said tasks involved extra effort which consumed a significant amount of their time, and that their additional duties and responsibilities justified a difference in pay.

## Title VII Claims

■■ Plaintiff also alleges that defendant violated Title VII of the Civil Rights Act of 1964 by failing to promote her, because of her sex, to the position of assistant director, and seeks to prove the allegation by showing the lack of women in supervisory positions within the defendant company. Were there evidence to convince the Court that plaintiff was qualified for the position of assistant director, the above contention might have merit. The lack of women on defendant's supervisory work force may be sufficient to establish a prima facie violation of Title VII. *Nance v. Union Carbide Corp.,* 397 F.Supp. 436 (W.D.N. C.1975); *See United States v. United States Steel Corp.,* 520 F.2d 1043, 1053 (5th Cir. 1975). The greater weight of the evidence, however, suggests that plaintiff was not objectively qualified to hold the position of assistant director, and hence is sufficient to rebut the lopsided statistics. Plaintiff's previous work experience, which began upon graduation from high school, was as a file clerk and stenographer. Her only experience with defendant, other than secretarial duties, consisted of clerical functions relating to insurance policies and claims.[1]

Plaintiff could also have established a prima facie violation of Title VII by defendant had she shown 1) that she applied and was qualified for the job, 2) that despite her qualifications, she was rejected, and 3) that after her rejection, the position remained open and defendant continued to seek applications from persons of plaintiff's qualifications. *McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973). The Court finds, however, that plaintiff failed to prove by a preponderance of the evidence the existence of any of the above requirements.[2]

■ Plaintiff also suggests that defendant violated Title VII by failing to interview her for the position of assistant director. *Gillin v. Fed. Paper Bd. Co.,* 479 F.2d 97 (2d Cir. 1973). However, there was no showing 1) that plaintiff asked to be interviewed, or even applied for the position, and 2) that upon making application, plaintiff was actually denied the opportunity to interview.

■ Plaintiff's claim that defendant retaliated against her because she filed a charge with the EEOC is completely without support in the evidence; in fact, the evidence is to the contrary. Plaintiff not only continued to perform her same duties for five months after the charge was filed, but received a raise in pay thereafter, in early 1974.

## Conclusion

Given the above findings of fact and conclusions of law, the Court is of the opinion that plaintiff's claims for relief are unsupported by the evidence and the law, and that, therefore, judgment must be entered for defendant, without an award of attorney's fees. Defendant's attorney is requested to prepare and submit an appropriate form of judgment.

---

1. Al Ryer, in contrast, had served as terminal manager at defendant's New Orleans branch, was a graduate of the company's executive training program, and had worked in all three subdivisions of the department of insurance, personnel, and safety.

2. These requirements do not constitute a *sine qua non* for establishing Title VII violations.

As the Supreme Court said in *McDonnell Douglas:*

> The facts necessarily will vary in Title VII cases, and the specification above of the prima facie proof required from respondent is not necessarily applicable in every respect to differing factual situations.

411 U.S. at 802, 93 S.Ct. at 1824.